IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INNOVATIVE GLOBAL SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. _____ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| SAMSARA NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Innovative Global Systems, LLC ("IGS"), by and through its undersigned counsel, for its Complaint against Defendant Samsara Networks, Inc. ("Samsara") states and alleges as follows:

## PARTIES

1. IGS is a limited liability company organized and existing under the laws of the State of South Carolina with a principal place of business at 1455 Dave Lyle Boulevard, Rock Hill, South Carolina 29730.

2. Upon information and belief, Samsara is a corporation organized and existing under the laws of the State of Delaware with a registered agent located at 1209 Orange Street, Wilmington, Delaware 19801.

3. Upon information and belief, Samsara incorporated as a Delaware corporation on or about February 9, 2015.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has general personal jurisdiction over Samsara.

7. Samsara is incorporated in the State of Delaware and therefore is a resident of the State of Delaware.

8. Samsara is "at home" in the State of Delaware. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

9. This Court also has specific personal jurisdiction over Samsara.

10. Samsara's actions establish such minimum contacts that jurisdiction comports with Delaware's long-arm statute, Del. Code. Ann. Tit. 3, § 3104, and the United States Constitution.

11. Upon information and belief, Samsara has conducted and does conduct business within the State of Delaware.

12. Upon information and belief, Samsara, directly and/or through subsidiaries or intermediaries, ships, distributes, offers for sale, sells, and/or advertises (including through its web pages) its products and services (including infringing products and services) described herein within the State of Delaware.

13. Upon information and belief, Samsara has committed acts of patent infringement within the State of Delaware.

14. Upon information and belief, Samsara has contributed to or induced (instructing and supplying others with infringing products and instructions for use) patent infringement by others in the State of Delaware.

15. Upon information and belief, Samsara has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that such products will be purchased and used by consumers in the State of Delaware.

16. Venue is proper in the District of Delaware under 28 U.S.C. § 1400(b) because Samsara resides and is incorporated in the State of Delaware. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520–21 (2017).

## **GENERAL ALLEGATIONS**

### *IGS*

17. Alan C. Lesesky, a mechanical engineer with more than forty-five (45) years of experience in the heavy-duty trucking industry, formed IGS.

18. Prior to forming IGS, Mr. Lesesky worked as an engineer for leading trucking companies, including White Motor Corporation and Freightliner Corporation.

19. Mr. Lesesky is the former Chairman of the Society of Automotive Engineers' ("SAE") Electrical and Electronic Committee and the current Chairman of the Technology and Maintenance Council's ("TMC") Future Truck Electrical and Electronic Committee.

20. In the early 1990s, Mr. Lesesky established Vehicle Enhancement Systems, Inc. ("VES"), a research, development, and consulting firm that specializes in the development of electrical and electronic products, primarily for the heavy-duty trucking industry, with a particular emphasis on products and technologies that enable or enhance the internal and external communications of tractors, trailers, trucks, and other vehicles.

21. VES has an office and research facility located in Rock Hill, South Carolina, which includes a 9,000-sq. ft. warehouse where it develops and tests products and inventions on its own Class 8 tractor-trailer vehicle.

22. In addition to developing and designing various products and technologies for the automotive and trucking industries, VES has worked closely with the United States Department of Transportation ("DOT") and the National Highway Traffic Safety Administration ("NHTSA") on

various projects and studies related to the development of safety initiatives for the trucking industry.

23.     In 2008, Mr. Lesesky established IGS as an intellectual property holding company for VES.

24.     In addition to owning and licensing intellectual property for various products and technologies developed by VES, IGS also invests in start-up companies in the trucking and communications industries.

25.     Among other awards, in 2014, IGS received the Gold Star award in Remote Diagnostics from Connected World Magazine honoring IGS's innovations.

*The Asserted Patents*

26.     This lawsuit asserts a cause of action for infringement of United States Patent No. 8,032,277 ("the '277 Patent") and United States Patent No. 10,157,384 ("the '384 Patent") (both, collectively "the ELD Patents").

27.     On October 4, 2011, the United States Patent and Trademark Office duly and legally issued the '277 Patent. A true and correct copy of the '277 Patent is attached as Exhibit A.

28.     The '277 Patent is valid and enforceable.

29.     Mr. Lesesky, Bradley R. Larschan, J. Richard Bishop, Jr., and James W. Welch developed and invented the technology covered by the '277 Patent based on their combined experience in engineering and within the trucking industry.

30.     The '277 Patent was validly assigned to IGS such that IGS is the rightful owner of all right and title in the '277 Patent. As the proper owner of the '277 Patent, IGS is entitled to take action to enforce its rights in the '277 Patent.

31. The '277 Patent covers an "electronic device for logging and reporting driver activity and vehicle operation" comprised of, among other things: a memory device configured to store operating data; a power supply; a first interface configured to connect to a vehicle mileage sensing system; a second interface configured to connect to a data bus of the vehicle; a receiver configured to link with a global navigation satellite system; at least one data portal configured to upload data from the memory device to a receiver external to the vehicle using a wireless communications network, and supporting a connection with a receiver external to the vehicle and under control of authorities; a driver interface configured to record driver identification information input by a driver of the vehicle and duty status input by the driver; a processor operatively connected to the memory device for processing encoded instructions and recording data selected from a group consisting of operating data, an hours of service log, and a fuel tax log; and a display.

32. The device and technology in the '277 Patent provide for, among other things, a unique and inventive in-cab electronic logging device ("ELD") which records a truck driver's GPS position, miles driven, driver identification, and driver performance data. The data is uploaded to an external receiver using a wireless communications network, so that the driver's dispatching facility can remotely monitor the activities of the truck on the road. Roadside inspection and other data may also be wirelessly transferred to the appropriate governmental authority.

33. On December 18, 2018, the United States Patent and Trademark Office duly and legally issued the '384 Patent. A true and correct copy of the '384 Patent is attached as <u>Exhibit B</u>.

34. The '384 Patent is valid and enforceable.

35. The '384 Patent was validly assigned to IGS such that IGS is the rightful owner of all right and title in the '384 Patent. As the proper owner of the '384 Patent, IGS is entitled to take action to enforce its rights in the '384 Patent.

36. The '384 Patent covers an "onboard electronic system for logging and reporting driver activity and operation data of a vehicle" comprised of, among other things: an onboard recorder adapted for continuously connecting to a data bus of the vehicle to continuously monitor, obtain and calculate vehicle operation data comprising mileage data, engine use data, time the engine is turned off, speed of the vehicle, and time the engine remains on while the vehicle is not moving, and said onboard recorder comprising a processor, a transmitter, and a memory device for recording and storing said vehicle operation data; said transmitter adapted for transmitting said vehicle operation data from said onboard recorder to a portable handheld communications device; data processing software operable on the handheld communications device comprising a processor and a display, said data processing software utilized to generate a hours of service log using said vehicle operation data continuously monitored, obtained and calculated from the data bus of the vehicle, and to present the hours of service log in a grid form on the display, the hours of service log comprising a driver's total hours driven today, total hours on duty today, total miles driven today, total hours on duty for seven days, total hours on duty for eight days, and the driver's changes in duty status and the times the duty status changes occurred, whereby the driver's hours of service log is applicable for comparison to a hours of service regulation to determine a compliance status of the driver; and a compliance signal emitted by said transmitter and indicating whether said onboard recorder is functioning to record vehicle operation data needed to generate the driver's hours of service log, such that the compliance status of the driver can be accurately determined, and in the event of a malfunction of said onboard recorder, said

compliance signal is adapted for activating a visual indicator to the driver signifying an out-of-compliance condition of said onboard recorder.

37. The technology in the '384 Patent provides for a unique and inventive onboard recorder (or ELD) and system for using an ELD to record, store, and transmit vehicle operation data to a handheld device to generate hours of service logs to determine driver compliance and signal to a driver whether he or she is compliant.

38. The ELD Patents are valid and subsisting.

39. No court or administrative body has invalidated any claim of the ELD Patents.

40. The ELD Patents have not expired.

41. The '277 Patent is a continuation of the 7,117,075 Patent which was filed for on August 15, 2005 as the 11/203,280 application.

42. The '384 Patents is a continuation in part of the 7,117,075 Patent which was filed for on August 15, 2005 as the 11/203,280 application.

43. The ELD Patents claim priority to August 15, 2005.

44. The ELD Patents are an improvement on the prior art that existed in 2005.

45. The elements of the ELD Patents' claims are not well-understood, routine, or conventional, and certainly would not have been well-understood, routine, or conventional to a skilled artisan 2005.

46. The claims of the ELD Patents are directed to the tangible components of a unique and inventive ELD or ELD system.

*The ELD Patents' Technology Was Developed to Increase Safety in the Trucking Industry*

47. As described above, Mr. Lesesky and the companies with which he has been involved have focused on developing solutions that increase safety in the trucking industry.

7

48. The technology covered in the ELD Patents represents important advancements in improving safety in the trucking industry.

49. In particular, the ELDs described and claimed in the '277 Patent and the ELD system described and claimed in the '384 Patent are adapted and configured to monitor and ensure compliance with federal hours-of-service regulations for drivers of commercial trucks in a way that prior-art devices were not.

50. Complying with federal government hours-of-service regulations represents a huge expense in the commercial trucking industry.

51. The federal government put these hours-of-service regulations in place, and periodically has revised them, in an effort to reduce accidents associated with driver fatigue and sleep disorder on the nation's highways.

52. The ELD technology described and claimed in the ELD Patents, among other things, ensures that drivers are unable to manipulate information relating to their hours of service and eliminates mistakes and false reporting caused by human error.

53. For example, with ELD technology, a driver is unable to claim that he or she pulled off the road to sleep for four hours when, in fact, they drove through the night without sleeping.

54. If the driver were recording hours-of-service information on paper, or through other conventional electronic means (or any prior-art devices/systems), he or she could easily manipulate the hours-of-service data.  With the ELD technology described in the ELD Patents, this cannot be done.

55. Although Mr. Lesesky has been focused on the important safety benefits associated with the ELD technology described in the ELD Patents for years, the federal government recently

determined that it is essential that all commercial trucks traveling in interstate commerce have ELD technology that has the characteristics described and claimed in the ELD Patents.

56.  Specifically, the Federal Motor Carrier Safety Administration published its electronic logging device rule ("ELD Mandate") in December 2015.

57.  Under the ELD Mandate, commercial trucking fleets had until December 2017 to have any trucks, model years 2000 or newer, traveling in interstate commerce outfitted with a compliant ELD.

58.  Under the ELD Mandate, a compliant ELD must, among other things, track a driver's hours of service electronically and be integrally synchronized with the truck's engine, like the ELD technology described and claimed in the ELD Patents.

59.  The ELD Mandate contains further technical specifications to ensure that all ELDs are standard and compliant.

*Samsara's Infringement of the ELD Patents*

60.  Samsara is an Internet of Things company with a focus on data analytics and improving efficiency and safety in the transportation industry.

61.  Samsara offers and sells electronic logging and tracking products and services, such as, among other things, an ELD which records driver performance data, mileage, and GPS location ("Products and Services").  This data can be accessed by a remote user through Samsara's cloud-based software and can also be wirelessly transmitted to the appropriate governmental authority.

62.  Samsara's infringing Products and Services are described on Samsara's website at: http://www.samsara.com/fleet/eld-compliance.  A true and correct copy of this webpage as of September 4, 2019 is attached as Exhibit C.

63. Samsara's infringing Products and Services include its Vehicle Gateway product among other ELDs. A true and correct copy of Samsara's webpage describing the Vehicle Gateway product as of September 4, 2019 is attached as Exhibit D.

64. Samsara works with the commercial trucking industry, among others, to provide these Products and Services.

65. Samsara's Products and Services provide a means to record and wirelessly transmit driver and vehicle data using an ELD.

66. Samsara's Products and Services provide a means for truck drivers and commercial trucking fleets to comply with the ELD Mandate.

67. Samsara's Products and Services infringe the '277 Patent.

68. Samsara's Products and Services contain a memory device configured to store operating data.

69. Samsara's Products and Services contain a power supply.

70. Samsara's Products and Services contain a first interface configured to connect to a vehicle mileage sensing system.

71. Samsara's Products and Services contain a second interface configured to connect to a data bus of a vehicle.

72. Samsara's Products and Services contain a receiver configured to link with a global navigation satellite system.

73. Samsara's Products and Services contain at least one data portal configured to upload data from the memory device to a receiver external to the vehicle using a wireless communications network, and supporting a connection with a receiver external to the vehicle and under control of authorities.

74. Samsara's Products and Services contain a driver interface configured to record driver identification information input by a driver of the vehicle and duty status input by the driver.

75. Samsara's Products and Services contain a processor operatively connected to the memory device for processing encoded instructions and recording data selected from a group consisting of operating data, an hours of service log, and a fuel tax log.

76. Some of Samsara's Products and Services contain and include a display.

77. For those Samsara Products and Services that do not contain or include a display, those Samsara Products and Services utilize a display.

78. For those Samsara Products and Services that do not contain or include a display, Samsara intends that those Products and Services utilize a display, and instructs and directs that those Products and Services are used with a display in addition to marketing those Products and Services for use with a display.

79. Samsara's Products and Services constitute a material part of the invention of the '277 Patent.

80. Samsara has knowledge that its Products and Services are especially made or especially adapted for use in an infringement of the '277 Patent when Samsara's customers use Samsara's Products and Services in connection with a display as intended.

81. Samsara's Products and Services are not a staple article or commodity of commerce suitable for substantial noninfringing use.

82. As described above, Samsara's Products and Services are designed specifically to allow customers to comply with the ELD Mandate. Samsara's customers cannot comply with the ELD Mandate if they do not use Samsara's Products and Services in connection with a display.

83. Samsara's customers have directly infringed, and will continue to directly infringe, the '277 Patent by using Samsara's Products and Services in connection with a display.

84. Samsara's Products and Services infringe the '384 Patent.

85. Samsara's Products and Services contain an onboard recorder adapted to continuously monitor, obtain, and calculate vehicle operation data.

86. Samsara's Products and Services contain an onboard recorder that is comprised of a processor, a transmitter, and a memory device for recording and storing vehicle operation data.

87. Samsara's Products and Services contain a transmitter adapted for transmitting vehicle operation data from the onboard recorder to a portable handheld communications device.

88. Samsara's Products and Services include data processing software operable on the handheld communications device comprising a processor and a display.

89. Samsara's Products and Services utilize data processing software to generate an hours of service log using said vehicle operation data to present the hours of service log in a grid form on the display.

90. Samsara's Products and Services present the hours of service log whereby the driver's hours of service log is applicable for comparison to an hours of service regulation to determine a compliance status of the driver.

91. Samsara's Products and Services emit a compliance signal indicating whether the onboard recorder is functioning to record vehicle operation data needed to generate the driver's hours of service log, such that the compliance status of the driver can be accurately determined, and in the event of a malfunction of said onboard recorder, said compliance signal is adapted for activating a visual indicator to the driver signifying an out-of-compliance condition of said onboard recorder.

92. Samsara's Products and Services are certified and compliant with the technical specifications set forth in the ELD Mandate.

93. Samsara represents to its customers that its Products and Services are compliant with the requirements set forth in the ELD Mandate as described on their website at: http://www.samsara.com/fleet/eld-compliance/how-it-works and https://kb.samsara.com/hc/en-us/articles/224813828-Is-Samsara-ELD-Compliant-.  A true and correct copy of these webpages as of September 4, 2019 is attached as Exhibit E.

94. Samsara's Products and Services are covered by the claims of the '277 Patent, including but not limited to claims 1 and 2.

95. Alternatively, Samsara's Products and Services contribute to the infringement of the claims of the '277 Patent, including but not limited to claims 1 and 2, when Samsara's customers utilize those Products and Services for their intended purpose and/or at the direction and instruction of Samsara, as exemplified in Samsara's Vehicle Gateway Datasheet, a true and correct copy of which is attached as Exhibit F.  (*See also* Exhibit C).

96. Samsara's Products and Services are covered by the claims of the '384 Patent, including but not limited to claim 1.

97. Alternatively, Samsara's Products and Services contribute to the infringement of the claims of the '384 Patent, including but not limited to claim 1, when Samsara's customers utilize those Products and Services for their intended purpose and/or at the direction and instruction of Samsara.  (*See* Exhibits C and F).

98. IGS has never licensed, permitted, or authorized Samsara, or any of its affiliates, to practice the inventions of the ELD Patents, to make, use, offer to sell, or sell, an ELD within the

United States, or to import any ELD or component constituting a material part thereof, into the United States.

### CLAIM FOR RELIEF – INFRINGEMENT OF THE ELD PATENTS

99. IGS restates and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth.

100. Samsara has directly infringed and continues to directly infringe the '277 Patent by making, using, selling, offering for sale, or importing into the United States products, systems, and/or methods covered by one or more claims of the '277 Patent. Samsara's Products and Services infringe one or more claims of the '277 Patent including but not limited to claims 1 and 2.

101. Samsara has directly infringed and continues to directly infringe the '384 Patent by making, using, selling, offering for sale, or importing into the United States products, systems, and/or methods covered by one or more claims of the '384 Patent. Samsara's Products and Services infringe one or more claims of the '384 Patent including but not limited to claim 1.

102. Samsara has induced and continues to contribute to and/or induce infringement of the ELD Patents by intending that others use, offer for sale, or sell in the United States, products, systems, and/or methods covered by one or more claims of the ELD Patents, including, but not limited to Samsara's ELDs which record and wirelessly transmit driver and vehicle data.

103. Samsara provides these products to others, such as customers, resellers, and end-use customers who, in turn, use, offer for sale, or sell in the United States Samsara's Products and Services that infringe one or more claims of the ELD Patents.

104. Samsara indirectly infringes the ELD Patents by contributing to and/or inducing infringement by others, such as resellers, customers, and end-use consumers, in accordance with 35 U.S.C. §§ 271(b), in this District and elsewhere in the United States. Direct infringement results

from the activities performed by the resellers, customers, and end-use consumers of Samsara's Products and Services.

105. Samsara received notice of the ELD Patents at least as of the date this lawsuit was served.

106. Samsara's affirmative acts of selling its Products and Services, causing its Products and Services to be manufactured and distributed, and providing instructions for using its Products and Services, induce Samsara's resellers, customers, and end-use consumers to use Samsara's Products and Services in their normal and customary way to infringe one or more claims of the ELD Patents. Samsara performs the acts that constitute induced infringement, and induces actual infringement, with knowledge of the ELD Patents and with the knowledge or willful blindness that the induced acts constitute infringement.

107. Samsara specifically intends for others, such as resellers, customers, and end-use consumers, to directly infringe one or more claims of the ELD Patents, or, alternatively, has been willfully blind to the possibility that its inducing acts would cause infringement. By way of example, and not as limitation, Samsara induces such infringement through its affirmative action by, among other things: (a) advertising the benefits of using Samsara's Products and Services; and (b) instructing on how to use Samsara's Products and Services.

108. Accordingly, a reasonable inference is that Samsara specifically intends for others, such as resellers, customers, and end-use consumers, to directly infringe one or more claims of the ELD Patents in the United States because Samsara has knowledge of the ELD Patents at least as of the date this lawsuit was served and Samsara actually induces others, such as resellers, customers, and end-use consumers, to directly infringe the ELD Patents by using, selling, and/or distributing, within the United States, Samsara's Products and Services.

109. It likewise is reasonable to infer that Samsara specifically intends for others, such as resellers, customers, and end-use consumers, to infringe one or more claims of the ELD Patents in the United States because Samsara has knowledge of the ELD Patents at least as of the date this lawsuit was served and Samsara actually induces others, such as resellers, customers, and end-use consumers, to indirectly infringe the ELD Patents by using, selling, and/or distributing, within the United States, Samsara's Products and Services.

110. As a result of Samsara's acts of infringement, IGS has suffered and will continue to suffer damages in an amount to be proven at trial.

111. This is an exceptional case, entitling IGS to recover its attorneys' fees from Samsara pursuant to 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

IGS hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Innovative Global Systems, LLC respectfully requests that the Court enter judgment in its favor and grant the following relief:

1. a judgment that Samsara directly and/or indirectly infringes one or more claims of the '277 Patent;

2. a judgment that Samsara directly and/or indirectly infringes one or more claims of the '384 Patent;

3. award IGS damages in the amount adequate to compensate IGS for Samsara's infringing products' infringement of the claims of the ELD Patents, but in no event less than a reasonable royalty, and supplemental damages for any continuing post-verdict infringement until entry of the final judgment with an accounting as needed, under 35 U.S.C. § 284;

4. award IGS pre-judgment interest and post-judgment interest on the damages awarded, including pre-judgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of the ELD Patents by Samsara to the day a damages judgment is entered, and an award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

5. a judgment and order finding this to be an exceptional case and requiring Samsara to pay the costs of this action (including all disbursements) and attorneys' fees, pursuant to 35 U.S.C. § 285;

6. order an accounting for damages;

7. award a compulsory future royalty for the ELD Patents; and

8. award any such further relief as the Court deems just and proper.

Dated: September 12, 2019

Of Counsel:

Joseph A. Schouten
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Telephone: (919) 277-9100
Facsimile: (919) 277-9177
jas@wardandsmith.com

Marla S. Bowman
msbowman@wardandsmith.com
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Telephone: (919) 277-9100
Facsimile: (919) 277-9177

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff Innovative Global Systems, LLC*